**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

|  |  |
|---|---|
| **MAXINE PELKER, Personal Representative of the Estate of REX D. PELKER, JR..,**<br><br>Plaintiff,<br><br>v.<br><br>**AIR & LIQUID SYSTEMS CORPORATION,** *et al.*,<br><br>Defendants. | Case No. 3:17-cv-1107-YY<br><br>**OPINION AND ORDER** |

**Michael H. Simon, District Judge.**

This case arises out of a wrongful death action brought against several defendants in Multnomah County Circuit Court. Rex D. Pelker, Jr. ("Pelker") died of lung cancer in December 2014. His wife and personal representative of his estate, Maxine Pelker ("Plaintiff"), alleges that her husband died as a result of exposure to asbestos. Plaintiff sued General Electric Corporation ("GE"), CBS Corporation ("CBS"), and others in state court. GE and CBS jointly removed the case to federal court. Pending before the Court is Plaintiff's motion to remand and for sanctions and fees. ECF 22. For the reasons that follow, the Court remands the action but denies Plaintiff's request for sanctions or fees.

**STANDARDS**

**A. Motion to Remand**

The standard of review applicable to a motion to remand is the same as that applicable to a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *See Leite v. Crane Co.*, 749 F. 3d 1117, 1121-22 (9th Cir. 2014) (explaining that "[c]hallenges to the existence of removal jurisdiction should be resolved within [the] same framework" as that applicable to motions to dismiss for lack of subject matter jurisdiction, due to "the parallel nature of the inquiry"). Thus, defendants seeking removal bear "the burden of proving by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction" is met. *Id.* at 1121.

**B. The Findings and Recommendation**

United States Magistrate Judge Youlee Yim You issued Findings and Recommendation in this case on September 25, 2017. ECF 32. Judge You recommended that the Court grant Pelker's motion to remand the case to state court (ECF 22) and deny Pelker's motions for sanctions, fees, and costs (ECF 22).

Under the Federal Magistrates Act ("Act"), the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). If a party files objections to a magistrate's findings and recommendations, "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; Fed. R. Civ. P. 72(b)(3).

For those portions of a magistrate's findings and recommendations to which neither party has objected, the Act does not prescribe any standard of review. *See Thomas v. Arn*, 474 U.S. 140, 152 (1985) ("There is no indication that Congress, in enacting [the Act], intended to require a district judge to review a magistrate's report to which no objections are filed."); *United*

*States. v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (holding that the court must review de novo magistrate's findings and recommendations if objection is made, "but not otherwise"). Although in the absence of objections no review is required, the Act "does not preclude further review by the district judge[] *sua sponte* . . . under a *de novo* or any other standard." *Thomas*, 474 U.S. at 154. Indeed, the Advisory Committee Notes to Fed. R. Civ. P. 72(b) recommend that "[w]hen no timely objection is filed," the Court review the magistrate's recommendations for "clear error on the face of the record."

Defendants timely filed an objection (ECF 35), to which Plaintiff responded (ECF 36). Defendants object to Judge You's recommendation that Plaintiff's motion to remand be granted.

## BACKGROUND

Acting as the personal representative of the estate of her husband, Rex D. Pelker, Jr., Plaintiff commenced this action in Multnomah County Circuit Court on April 13, 2016. While in state court, Plaintiff filed a First Amended Complaint, a Second Amended Complaint, a Third Amended Complaint, and a Fourth Amended Complaint. ECF 1-1 through ECF 1-5. Plaintiff sues numerous defendants and alleges that her husband died of lung cancer as a result of asbestos exposure sustained while he was working as a laborer, insulator, shipyard worker, or construction worker between 1960 and 1980. Plaintiff also alleges that her husand was exposed to asbestos as early as 1956, while accompanying his father, who also worked as an insulator. Plaintiff's Fourth Amended Complaint details various job sites at which Pelker allegedly was exposed to asbestos. ECF 1-5. The Fourth Amended Complaint does not specifically allege that Pelker was exposed to asbestos on board any U.S. Navy ships.

On June 15, 2017, Plaintiff's counsel sent Defendants a request for production seeking, among other things, any evidence "relevant to the Plaintiff's claim that he [*sic*] was exposed to asbestos while working in the pump rooms on the USS Franklin D. Roosevelt." ECF 23 at 31

(Request for Production No. 29). On July 12, 2017, Randy Iola ("Iola"), purportedly acting as

settlement counsel for Plaintiff, sent an email to counsel for CBS, Richard M. Lauth ("Lauth").

In Iola's email to counsel for CBS, Iola stated, in relevant part:

> From approximately 1961 through the 1970s, Mr. Pelker worked
> as a shipyard worker and insulator at Swan Island, a shipyard in
> Oregon. During this time he was employed by AC & S Inc.,
> Owens Corning, Northwest Machine & Iron Works, and Albina
> Engine & Machine Works, and Columbia Asbestos. US Naval
> ships were frequently present at Swan Island and Mr. Pelker
> assisted in the overhauling of these ships. Naval Ships that are
> known to be present and worked on by Mr. Pelker include: USS
> Meyerkord (FF-1058), USS Lang (FF/DE-1060), USS Henry B.
> Wilson, and USS Stein (FF/DE-1065). As a shipyard worker and
> insulator, Mr. Pelker had to rip out engine rooms, including but not
> limited to turbines, and replace new materials. He was also in the
> presence of other maintenance personnel who worked on the
> engine room equipment.

ECF 27-1 at 1. In his email, Iola also listed the CBS equipment that was believed to have been

aboard these ships. Iola invited Lauth to call to discuss the matter.

On the same day, Iola sent a similar email to counsel for GE, Paul Slater ("Slater"). Iola

similarly explained in detail Pelker's exposure on the USS Meyerkord, USS Lang, USS Henry B.

Wilson, and USS Stein. ECF 29-1 at 1-2. Iola's email to counsel for GE similarly provided

details about Pelker and his exposure to GE equipment, including while working on the USS

Henry B. Wilson. Iola similarly invited Slater to call to discuss resolving this claim.

On July 17, 2017, GE and CBS[1] removed the action to federal court, pursuant to 28

U.S.C. § 1442(a)(1). That statute is sometimes known as the "federal officer removal statute."

After removal, trial counsel for Plaintiff, Jeffrey Mutnick ("Mutnick"), contacted several of the

Defendants and explained that the discovery request referencing the USS Franklin D. Roosevelt

---

[1] In various places in the pleadings and other documents in this matter, CBS Corporation
is sometimes referred to as "Westinghouse." CBS is a successor by merger to Westinghouse
Electric Corporation. ECF 26 at 7.

had been sent in error and that Plaintiff had not intended to assert and would not assert any claims in this case based on Pelker's exposure to asbestos while on a U.S. Navy vessel. ECF 23 at 7. Based on this representation, Mutnick asked Christopher Marks, counsel for GE and CBS, to withdraw the removal petition filed by those Defendants. *Id.* These Defendants declined to do so. On August 16, 2017, Plaintiff filed a motion to remand the case to state court. ECF 22.

## DISCUSSION

### A. Federal Officer Removal Generally

One requirement for removal of a civil action to federal court is that the case could have been brought in federal court originally. *See* 28 U.S.C. § 1441(a). Under the "well-pleaded complaint rule," "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Because a defense "does not appear on the face of a well-pleaded complaint, [it] does not authorize removal to federal court." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987).

Defendants, however, assert that removal is proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). Under § 1442, certain cases are not subject to the well-pleaded complaint rule. Specifically, a case brought against a federal officer "may be removed . . . if the *defense* depends on federal law." *Jefferson Cty., Ala. v. Acker*, 527 U.S. 423, 431 (1999) (emphasis added). The purpose of § 1442 is "to ensure a federal forum in any case where a federal official is entitled to raise a defense arising out of his duties." *Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017) (quoting *Arizona v. Manypenny*, 451 U.S. 232, 241 (1981)). "[F]or conduct performed under color of federal office," this removal right "is absolute." *Id.* (quotation marks omitted).

The procedure for removal under § 1442 is provided in 28 U.S.C. § 1446. Pursuant to § 1446(b)(3), when a case is not removable based on its initial pleadings, a notice of removal

may nonetheless "be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or *other paper* from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3) (emphasis added).

If the procedural requirements in § 1446 are met, a party seeking removal under § 1442(a)(1) must show three things. First, the removing party must show that "it is a 'person' within the meaning of the statute." Second, the removing party must show that "there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims." Third, the removing party must show that "it can assert a 'colorable federal defense.'" *Goncalves*, 865 F.3d at 1244 (quoting *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006)). The Ninth Circuit instructs us that § 1442 should be interpreted "broadly in favor of removal." *Id.*

Defendants argue that Plaintiff's request for production and the emails sent from Iola constituted sufficient "other paper" under § 1446(b)(3) that allowed Defendants to ascertain—for the first time—that Plaintiff's case was removable. Specifically, Defendants argue that both the request for production and the settlement-related emails provided notice that Plaintiff intended to pursue claims related to asbestos exposure while aboard U.S. Navy vessels. Defendants also argue that the claims against them relating to asbestos exposure aboard navy ships are removable under § 1442, the federal officer removal statute, because to the extent that these Defendants' actions caused asbestos exposure, Defendants were acting pursuant to the directions of federal officers. According to the removing Defendants, this would establish a colorable federal defense to any claims asserted against them. Plaintiff responds that neither the request for production nor Iola's emails may serve as a basis for removal. Plaintiff adds that Iola's emails should be

excluded from evidence because they relate to settlement communications. Finally, Plaintiff

argues that because Plaintiff now waives all claims arising out of any exposure to asbestos while

Pelker worked on a U.S. Navy vessel, there is no longer any basis for federal jurisdiction.

**B. Whether Plaintiff Demonstrated Intent to Pursue Claims of Exposure on Navy Ships**

    **1. Whether the Settlement-Related Emails Constitute "Other Paper"**

Plaintiff and Defendants dispute whether letters or emails sent for settlement purposes

can constitute "other paper" sufficient to form the basis for removal under § 1446. The Court

concludes that they can. In *Babasa v. LensCrafters, Inc.*, the Ninth Circuit considered whether a

settlement letter could provide a basis removal under § 1446. 498 F.3d 972 (9th Cir. 2007). In

*Babasa*, plaintiffs filed a putative class action in state court. The parties agreed to mediate, and

prior to mediation plaintiffs' counsel sent defense counsel a letter, expressly for purposes of

mediation. In that letter plaintiffs' counsel estimated that plaintiffs' alleged damages exceeded

$5 million. *Id.* at 974. After attempts to settle the case through mediation failed, the parties

conducted discovery in state court. In the course of discovery, the plaintiffs' counsel reiterated

that the damages sought would exceed $5 million. Shortly thereafter, the defendant removed the

case. Under the Class Action Fairness Act of 2005, Pub.L. No. 109–2, 119 Stat. 4 (2005)

(codified in various sections of 28 U.S.C.), class actions with an amount in controversy

exceeding $5 million may be removed to federal court. 28 U.S.C. § 1332(d)(2). The question in

*Babasa* was whether the defendant's eventual removal was timely, a question governed by

§ 1446(b). Because the defendant had received the settlement communication disclosing that the

action was removable more than 30 days before removing the action, the district court held that

the removal was not timely and remanded the case back to state court. The Ninth Circuit

affirmed.

The Ninth Circuit agreed with the district court that the defendant had "received § 1446(b) notice" in the form of the mediation-related letter estimating damages. *Id.* at 974-75. The Ninth Circuit also had "no doubt that [the defendant] could have ascertained, upon receiving the [mediation] letter, that the case was removable." *Id.* at 975. The court also noted that it had already "previously held that a settlement letter is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim." *Id.* (quoting *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) (alteration omitted)). Thus, a settlement-related letter or email can constitute § 1446(b) notice to the extent that it reasonably puts a defendant on notice that a case is removable.

This understanding comports with the law in other circuits. As the Eleventh Circuit noted, "[w]hat constitutes 'other paper' . . . has been developed judicially." *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1212 n. 62 (11th Cir. 2007). "[R]esponses to requests for admissions, settlement offers, interrogatory responses, deposition testimony, demand letters, and email estimating damages" have all been held to qualify as "other paper." *Id.*; *see also Addo v. Globe Life & Acc. Ins. Co.*, 230 F.3d 759, 762 (5th Cir. 2000) (explaining that "a post-complaint letter, which is not plainly a sham, may be 'other paper' under § 1446(b)," a holding that the court noted "is consistent with the purpose of the removal statute to encourage prompt resort to federal court [when proper] . . . . [and] discourages disingenuous pleading by plaintiffs in state court to avoid removal").[2]

---

[2] There is some support for a contrary interpretation of "other papers." *See, e.g.*, *Pack v. AC & S, Inc.*, 838 F. Supp. 1099, 1101 (D. Md. 1993) ("The phrase 'other paper' refers to 'documents generated within the state court litigation'"); *Riggs v. Continental Baking Co.*, 678 F. Supp. 236, 238 (N.D. Cal. 1988) ("The elements of removability must be specifically indicated in official papers before the statutory period begins to run."); *Johansen v. Employee Benefit Claims, Inc.*, 668 F. Supp. 1294, 1296 (D. Minn. 1987) (concluding that "other paper" refers "solely to documents generated within the state court litigation itself"). But these cases, which

Plaintiff also suggests that letters involved in settlement negotiations are inadmissible under Rule 408 of the Oregon Rules of Evidence or Rule 408 of the Federal Rules of Evidence. Both Oregon's Rule 408 and the federal Rule 408 preclude evidence of conduct or statements made in compromise negotiations from being used for certain purposes. As an initial matter, the Court notes that federal law governs the resolution of Plaintiff's remand motion. *See Babasa*, 498 F.3d at 974 (explaining that federal law governs the issue of whether a case meets the amount in controversy requirement for federal diversity jurisdiction). Thus, the Federal Rules of Evidence govern this matter. *See* Fed. R. Evid. 1101.

Rule 408 of the Federal Rules of Evidence provides that evidence of conduct or statements made during settlement negotiations is not admissible "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or contradiction." Fed. R. Evid. 408(a). This, however, is not the purpose for which Defendants use Iola's emails. Evidence of compromise negotiations may be admitted for another purpose, such as to show that, prior to Defendants' removal, Plaintiff demonstrated an intent to pursue claims against Defendants based on exposure aboard U.S. Navy ships.

The Court concludes that a settlement-related letter or email may constitute "other paper" under 28 U.S.C. 1446(b)(3). To the extent that such a communication brings to light new facts or

---

state generally that the term "other paper" may only refer to official documents in the case, typically focused on whether changes in statutory or case law since the filing of an action could constitute "other paper" supporting removability—not whether a document related to the case, though not an *official* document, may suffice. *See Sunburst Bank v. Summit Acceptance Corp.*, 878 F. Supp. 77, 80-81 (S.D. Miss. 1995) (discussing other courts' interpretations of "other paper," and noting that many courts apply it "only to papers 'filed in the case,'" while others apply it to "'papers' generally"). In light of the Ninth Circuit's holding in *Babasa*, and the general trend to include settlement letters in the definition of "other paper," these cases are unpersuasive.

claims that make a case removable, it restarts a defendant's 30-day clock for removal under 28 U.S.C. § 1446.

### 2.  Whether the Settlement-Related Emails Indicate an Intent to Pursue Claims

For Plaintiff's claims to be removable to federal court, there must be a causal nexus between Plaintiff's claims and Defendants' actions under the direction of a federal officer. In *Babasa*, the Ninth Circuit noted that, in the context of an amount-in-controversy dispute, "a settlement letter is relevant evidence . . . if it appears to reflect a reasonable estimate of the plaintiff's claim." *Babasa*, 498 F.3d at 975 (quoting *Cohn*, 281 F.3d at 840) (alteration omitted). If Iola's emails reasonably put Defendants on notice that Plaintiff was pursuing a claim of exposure on U.S. Navy vessels, then—to the extent such a claim would be removable—those emails were relevant evidence on which to base a removal under § 1446(b).

The Court concludes that Iola's emails indicate that Plaintiff intended to pursue claims related to asbestos exposure on U.S. Navy vessels. Both emails identify in detail the U.S. Navy vessels on which Pelker is alleged to have worked, the equipment belonging to each Defendant found aboard those ships, and the work that Pelker did on those ships. Indeed, the emails only identify U.S. Navy vessels and no other ships as the sources of asbestos exposure from Defendants' machines. Iola's emails belie Plaintiff's counsel's assertion that Plaintiff has never pursued a claim in this case for exposure aboard a U.S. Navy vessel.

Plaintiff also argues that Iola was not the attorney of record in Plaintiff's case and that "his involvement as counsel is limited to negotiations on behalf of various law firms throughout the country with the Defendants' national counsel." ECF 30 at 3. Plaintiff explains that her counsel in this case, Mutnik, has never met Iola and has not discussed this case directly with him. Plaintiff adds that Iola has no contractual relationship with Plaintiff. Plaintiff acknowledges, however, that her counsel, Mutnik, sought negotiation assistance on behalf of Plaintiff, and

Plaintiff explains that Andy Waters from the law firm Waters & Kraus, "as a courtesy to Plaintiff's counsel, agreed to communicate" with GE and Westinghouse (CBS) on Plaintiff's behalf for the purposes of settlement. ECF 30 at 13. Plaintiff added that "[i]t is Plaintiff's counsel's understanding that Waters & Kraus communicates with [Defendants'] national counsel, for settlement purposes only, through Randy Iola." *Id.*

Thus, Plaintiff's counsel appears to have contracted out a least a portion of the settlement negotiations in this case. The fact that Plaintiff has not directly communicated with Iola is irrelevant. Plaintiff acknowledges that she or her counsel sought assistance from Waters & Kraus in conducting settlement discussions with Defendants, and Waters & Kraus provided such assistance through Iola. Plaintiff's attempt to distance herself from Iola's representations to Defendants is unpersuasive.

**C. Whether Claims of Exposure Aboard U.S. Naval Vessels are Removable**

Having concluded that Defendants had notice that Plaintiff intended to pursue claims of exposure aboard U.S. Navy vessels, the Court next considers whether such claims are removable. The Ninth Circuit instructs that § 1442 should be interpreted "broadly in favor of removal." *Goncalves*, 865 F.3d at 1244.

As the Ninth Circuit explained in *Leite*, Defendants must allege facts that establish the court's subject-matter jurisdiction, much like federal pleading requirements. A plaintiff seeking remand may make either a "facial" attack—arguing that Defendants' facts "are insufficient on their face to invoke federal jurisdiction—or a "factual attack"—"contesting the truth of [Defendants'] factual allegations." *Leite*, 749 F.3d at 1121-22. Plaintiff has launched neither a facial nor a factual attack on Defendants' contention that a claim for exposure aboard a U.S. Navy vessel is removable. Thus, the Court must determine whether Defendants have alleged

sufficient facts to establish the Court's subject-matter jurisdiction. The Court concludes that they have.

First, Defendants are "persons" within the meaning of § 1442. *See* 1 U.S.C. § 1 ("In determining the meaning of any Act of Congress, unless the context indicates otherwise . . . the word[] "person" . . . include[s] corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals."); *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 153-54 (2007) (noting that government contractors may fall within the terms of the federal officer removal statute, implicitly accepting that they may be "persons" within the statute's meaning).

Second, Defendants have sufficiently alleged that: (1) there is a causal nexus between their actions and Plaintiff's claims of exposure on a U.S. Navy vessel; and (2) that those actions were taken pursuant to a federal officer's directions. Defendants also have provided evidence to support this assertion, which Plaintiff does not challenge. The Ninth Circuit has noted that "the 'hurdle erected by [the causal-connection] requirement is quite low.'" *Goncalves*, 865 F.3d at 1244 (quoting *Isaacson v. Dow Chemical Co.*, 517 F.3d 129, 137(2d 2008)) (alteration in original). For this prong, Defendants "need only show that the challenged acts 'occurred *because of* what they were asked to do by the Government.'" *Id*. at 1245 (quoting *Isaacson*, 517 F.3d at 137) (emphasis in original). Here, GE and CBS contend that they installed insulation on U.S. Navy vessels at the request of the Navy. Thus, "[t]he 'very act' that forms the basis for challenging [Defendants' conduct] . . . 'is an act that [Defendants] contend they performed under the direction of federal officers.'" *Id*. (quoting *Leite*, 749 F.3d at 1124) (alterations omitted).

With respect to the requirement that Defendants' actions be taken pursuant to a federal officer's directions, "[t]he words 'acting under' are broad," and "must be 'liberally construed.'"

*Id.* (quoting *Watson*, 551 U.S. at 147) (alteration omitted). "For a private entity to be 'acting under' a federal officer, the private entity must be involved in 'an effort to assist, or to help carry out, the duties or tasks of the federal superior.' The 'relationship typically involves 'subjection, guidance, or control.'" *Id.* (quoting *Watson*, 551 U.S. at 147, 151) (emphasis omitted). Defendants have alleged that their actions on U.S. Navy vessels occurred while "acting under" the Navy's directions. CBS has provided evidence that the design, manufacture, and supply of Westinghouse turbines to the U.S. Navy was done in compliance with the Navy's MilSpecs, and was subject to close supervision and control by naval officers. The MilSpecs at the time required the use of asbestos. GE also provides evidence of a similar relationship with the U.S. Navy. The Navy had control and supervision over GE's design and manufacture of turbines for use on Navy ships, and the Navy's MilSpecs at the time required the use of asbestos in turbines.

Third, Defendants have established that they can assert a colorable federal defense to Plaintiff's claims—specifically, the government contractor defense. The government contractor defense was recognized in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988). "This defense protects government contractors from tort liability that arises as a result of the contractor's compliance with the specifications of a federal government contract." *Cabalce v. Thomas E. Blanchard & Assocs., Inc.*, 797 F.3d 720, 731 (9th Cir. 2015) (quoting *Getz v. Boeing Co.,* 654 F.3d 852, 860 (9th Cir.2011)) (alteration omitted). The Ninth Circuit has described how this defense is applied:

> To invoke the defense successfully, the contractor must establish three elements: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States."

*Getz*, 654 F.3d at 861 (quoting *Boyle*, 487 U.S. at 512) (internal citation omitted).

As the Ninth Circuit has stated, "[a]t this stage, [a defendant] doesn't have to prove that its government contractor defense is in fact meritorious . . . . [A] defendant invoking § 1442(a)(1) 'need not win his case before he can have it removed.'" *Leite*, 749 F.3d at 1124 (quoting *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)). Rather, Defendants must only "prove by a preponderance of the evidence . . . that its government contractor defense is 'colorable.'" *Id.* (quoting *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999)).

GE and CBS each allege that U.S. Navy officers approved reasonably precise specifications for turbines used on Navy vessels, and the equipment produced by GE and CBS conformed to those specifications. Additionally, because the Navy appears to have known at the time about the risks involved in the use of asbestos, Defendants assert that they were not required to warn the Navy about the risks of asbestos. Defendants not only allege these facts, but also provide affidavits in support of them. These factual allegations and evidentiary support establish that Defendants have at least a colorable federal defense to claims of asbestos exposure on U.S. Navy vessels.

## D.  Post-Removal Waiver of Removable Claims

Plaintiff asserts that "Plaintiff has not and does not allege exposure to asbestos onboard a naval vessel and seeks no compensation for exposure, if any, onboard a naval vessel" (ECF 30 at 2); that "Plaintiff is unaware of any specific witness who can place the unprotected decedent on a specific vessel, at a specific time at which he was exposed to asbestos from Defendants' products" (*id.*); that "[n]o specific reference will be made to any naval vessel and no compensation sought for naval exposures, if any" (*id.*); and that "[b]y withdrawing any claim for damages based upon Plaintiff's exposure, if any, onboard a naval vessel, Plaintiff has eliminated Defendants' naval exposure, if any." ECF 30 at 5. Plaintiff argues that, having waived all claims of exposure on U.S. Navy ships, she can no longer present any evidence of such exposure, and

thus there can be no federal subject matter jurisdiction due to a federal defense to a claim that she does not—and cannot—allege or pursue. ECF 30 at 9-10.

Plaintiff invites the Court to consider U.S. Magistrate Judge Beckerman's Findings and Recommendation in *Coury v. Air & Liquid Systems Corporation*, adopted by Judge Hernandez. 2017 WL 2345688 (D. Or. Mar. 21, 2017), *report and recommendation adopted*, 2017 WL 2345584 (D. Or. May 26, 2017). In *Coury*, a factually similar case, the plaintiff filed a complaint in state court that did not specifically allege exposure on U.S. Navy ships. But, plaintiff's counsel sent a "ship list"—a list of ships on which Coury was alleged to have worked—that included U.S. Navy ships, as well as a declaration indicating that the decedent in *Coury* had worked on both naval and civilian ships. The defendants in *Coury* removed. In support of the plaintiff's motion for remand, the plaintiff argued that the ship list was sent inadvertently. Judge Beckerman concluded that the defendants could not establish a causal nexus between the plaintiff's claims and the defendants' work for the U.S. Navy, explaining that because the ship list had been sent inadvertently, the plaintiff had never actually and intentionally alleged exposure on U.S. Navy ships. Judge Beckerman then granted the plaintiff's motion for remand.

This case presents a slightly different question. Although Plaintiff claims that she is not currently alleging any claims of exposure on U.S. Navy ships, and although Plaintiff's document request was sent inadvertently, Plaintiff has not provided a similar explanation with respect to Iola's emails. Although it may be that an inadvertent request for production or an inadvertently-sent "ship list" might destroy the requisite causal connection between a plaintiff's claims and a federal defense because they do not adequately indicate an intent to pursue a removable claim, that is not the case here. In the pending lawsuit, Iola's emails asserted only exposure on U.S.

Navy vessels, and there is no evidence presented that those emails were sent inadvertently. Although Plaintiff states that Defendants "know" or "have evidence" that Pelker never worked on the USS Roosevelt (the subject of the inadvertently-sent request for production), Plaintiff does not state as much with respect to the other ships referred to in Iola's emails. Therefore, unlike in *Coury*, at the time of removal, Plaintiff *was* pursuing claims of exposure on U.S. Navy vessels. Thus, these claims make the case removable.

The question now is whether remand may nonetheless be proper when a plaintiff waives all claims involving a federal defense after removal. Several district courts have held that these types of waivers—including in factually similar contexts—support remand. *See Fisher v. Asbestos Corp.*, 2014 WL 3752020, at *3 (collecting district court cases crediting similar waivers); *Lockwood v. Crane Co.*, 2012 WL 1425157, at *2 (when plaintiff disclaims any claims arising from exposure at government sites, "there is no jurisdictional basis . . . to remain in federal court"); *Pratt v. Asbestos Corp. Ltd.*, 2011 WL 4433724 at *2 (N.D.Cal. Sept.22, 2011) (Chen, J.) ("Plaintiff's waiver has rendered any federal defenses moot. There must be claims against which a federal defense is cognizable, and Plaintiff's waiver has removed any such claims."). The court in *Fisher* noted that "post-removal developments may cause remand not only to be proper, but even to be required" under 28 U.S.C. 1447(c). As the *Fisher* court and other courts have reasoned, "[t]o deny remand [after such a waiver] would affirm [defendant]'s right to assert a defense against a claim that does not exist, an absurd result." *Fisher*, 2014 WL 3752020 at *3.

Defendants argue that removability must be determined *at the time of removal*, and thus post-removal waivers have no effect. Defendants cite *Sparta Surgical Corp. v. National Ass'n of Securities Dealers*, 159 F.3d 1209 (9th Cir. 1998), *abrogated on other grounds by Merrill Lynch,*

*Piere, Fenner & Smith Inc. v. Manning*, 136 S. Ct. 1592 (2016). In *Sparta Surgical*, the Ninth

Circuit reviewed a motion to remand. Among other arguments advanced, Sparta Surgical argued

that, because it filed a post-removal amended complaint that removed "most" references to the

claim making the case removable, the case should be remanded. The Ninth Circuit stated:

"jurisdiction must be analyzed on the basis of the pleadings filed at the time of removal without

reference to subsequent amendments." *Id*. at 1213. Similarly, in *DeNardo v. Municipality of

Anchorage*, the Ninth Circuit stated that "a plaintiff may not compel remand by amending a

complaint to eliminate the federal question upon which removal was based, and DeNardo's

claims were essentially federal in nature." 255 F. App'x 195 (9th Cir. 2007) (citing *Sparta

Surgical*, 159 F.3d at 1212-13).

In the pending case, although it was not the complaint but "other papers" under 28 U.S.C.

§ 1446 that made this case removable, the same principle applies. Because the Court is required

to analyze removability *at the time of removal*, and because Plaintiff was in fact asserting claims

of exposure on U.S. Navy vessels at the time of removal, Plaintiff's post-removal waiver has no

effect on whether Defendants' removal was *itself* proper. But, although removal was proper at

the time, remand still may be appropriate.

Plaintiff has now waived all claims of exposure aboard U.S. Navy vessels and the effect

is that any such claims have been eliminated. All that remain in this case are Plaintiff's state-

based claims of exposure in civilian shipyards and ships. Under § 1367(c), a district court "may

decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all

claims over which it has original jurisdiction." 28 U.S.C. § 1367(c); *see also Davila v.

Smith*, 684 F. App'x 637, 638 (9th Cir. 2017) ("The district court did not abuse its discretion in

declining to exercise supplemental jurisdiction over Davila's state law claims after dismissing the

federal claims."); *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1000 (9th Cir.), *supplemented*, 121 F.3d 714 (9th Cir. 1997), *as amended* (Oct. 1, 1997) ("This is because a federal district court with power to hear state law claims has discretion to keep, or decline to keep, them under the conditions set out in § 1367(c)."). In *Williams v. Costco Wholesale Corp.*, although the Ninth Circuit noted that "post-removal amendments to the pleadings cannot affect whether a case is removable," the court also noted that "[d]ismissal of the federal claim would . . . ordinarily[] have authorized the district court to remand the pendent state law claims." 471 F.3d 975, 976 (9th Cir. 2006) (citing *Sparta Surgical*, 856 F.2d at 1379). Thus, precedent suggests that when federal (or removable) claims have been waived—or voluntarily dismissed by a plaintiff—a district court has discretion to remand.

Absent claims that arise from exposure on U.S. Navy vessels, this case belongs in state court. Plaintiff's claims against several other defendants remain pending in state court. To separate those state-based claims from the remaining state-based claims against CBS and GE would cause unnecessary cost, delay, and risk of inconsistent verdicts. *See Frawley v. General Elec. Co.*, 2007 WL 656857, at *3 (S.D.N.Y. Mar. 1, 2007) (discussing the principles of judicial economy and fairness that factor into a discretionary remand). The Court concludes that remand would best "serve[] the objectives of economy, convenience and fairness to the parties, and comity." *Trustees of Constr. Indus. & Laborers Health & Welfare Tr. v. Desert Valley Landscape & Maint., Inc*., 333 F.3d 923, 925 (9th Cir. 2003).

Defendants argue that this Court does not have discretion to remand because even Plaintiff's remaining claims are subject to a federal officer defense. Defendants argue that "even where a plaintiff . . . seeks, on the face of her pre-removal pleadings, to expressly disavow any claim subject to removal, § 1442(a)(1)-based jurisdiction attaches where she nonetheless

factually alleges injury based at least in part on Navy-related asbestos exposures." ECF 35 at 13-14. Plaintiff has now unambiguously stated before this Court that she has no evidence that Pelker was ever on board any specific ship—and in particular any U.S. Navy vessel. *See generally* ECF 30.

Defendants suggest that Plaintiff's assertion that there is evidence that Pelker worked on any specific ship may later present issues concerning Defendants' potential government contractor defense. ECF 35 at 15. If Plaintiff cannot establish which ship or ships Pelker worked on at any given time, and if it is the case that Defendants had machinery present on both U.S. Navy and civilian vessels in the shipyards in which Pelker worked, it may be difficult to disentangle any harm to Pelker caused by machinery on U.S. Navy ships from harm caused by machinery on civilian ships. That is a different situation, however, from the facts presented in *Machnik v. Buffalo Pumps Inc.*, 506 F. Supp.2d 99, 103 n.1 (D. Conn. 2007) ("Machnik's argument that the suit must be remanded because his complaint disclaimed any federal claims is unavailing . . . . Subject-matter jurisdiction under § 1442(a)(1) is based upon a federal defense, regardless of whether the plaintiff's cause of action rests on state law. Machnik's claims against GE are based only upon his exposure to asbestos-containing products supplied by GE to the U.S. Navy. Because of this, once GE meets the threshold showing to assert a federal contractor defense, even artful pleading around any federal claims cannot defeat federal subject matter jurisdiction.") (citations omitted).

If Defendants had evidence that Pelker worked on Navy ships, then Defendants may still be entitled to assert a federal officer defense. Because Plaintiff and her counsel have now represented to the Court that they have no such evidence (ECF 31 at 2-3) and because Defendants have not pointed to any of their own evidence that Pelker worked on Navy ships,

there is no evidence to support the assertion that Defendants—after Plaintiff's waiver and express assurance that Iola's emails were incorrect—may still assert a colorable federal officer defense.

Defendants also argue that the Court has no discretion to remand because Plaintiff's remaining claims of exposure on commercial ships fall under this Court's admiralty jurisdiction. Plaintiff does not respond to this argument. The "Saving to Suitors" clause of 28 U.S.C. § 1333 generally preserves plaintiffs' rights to litigate admiralty claims in state court. Under 28 U.S.C. § 1333, state courts are "competent to adjudicate maritime causes of action in proceedings . . . where the defendant is a person, not a ship or some other instrument of navigation." *Ghotra by Ghotra v. Bandila Shipping, Inc.*, 113 F.3d 1050, 1054 (9th Cir. 1997). The "Saving to Suitors Clause" of § 1333 thus precludes removal based only on such a claim. As Defendants point out, however, "removal of maritime cases is permissible as long as there is an independent basis for federal jurisdiction." *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 220 (5th Cir. 2013). As an independent basis of jurisdiction permitting removal, Defendants point to removal based on the federal officer statute. Further, Defendants argue that a district court has no discretion under § 1367(c) to remand a claim which is itself within its original jurisdiction, such as a federal court's non-exclusive admiralty jurisdiction. In other words, Defendants first rely on federal officer removal, which itself is no longer a proper basis for federal jurisdiction, to get into federal court, and then jump to admiralty jurisdiction—which could not have supported removal—to keep the case after federal officer removal jurisdiction has fallen away. Without deciding whether this case would fall within admiralty jurisdiction, *see In re Mission Bay Jet Sports, LLC*, 570 F.3d 1124, 1126 (9th Cir. 2009) (discussing admiralty jurisdiction), the steps that

Defendants ask this Court to take go too far. Defendants cite to no federal case law that reached such a result in a comparable situation.

**E.  Sanctions, Fees, and Costs**

Because the Court finds that removal was proper at the time of removal, there is no basis for sanctions, fees, or costs on Defendants. Plaintiff's request for sanctions, fees, and costs is denied.

**CONCLUSION**

Plaintiff's Motion for Remand (ECF 22) is GRANTED without sanctions, fees, or costs. This case is REMANDED to the Circuit Court of the State of Oregon for the County of Multnomah, and the Clerk of the Court is directed to send the files in this case to the Clerk of the Multnomah County Circuit Court.

**IT IS SO ORDERED**.

DATED this 2nd day of February, 2018.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge